IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GHEBRE KIFLE,

                   Petitioner,                        No. 3:12-mc-28-HZ

     v.

USCIS DISTRICT DIRECTOR, PORTLAND,       OPINION & ORDER
OREGON,

                  Respondent.


Terrance C. Hunt
TERRANCE C. HUNT, ATTORNEY AT LAW P.C.
1618 S.W. First Avenue, Suite 315
Portland, Oregon 97201

      Attorney for Petitioner

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
/ / /
/ / /


1 - OPINION & ORDER

James E. Cox, Jr.
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Respondent

HERNANDEZ, District Judge:

    Petitioner Ghebre Kifle seeks to amend the date of birth appearing on his naturalization

certificate.  I deny the petition.

BACKGROUND

    Petitioner is a naturalized United States citizen and a native of Ethiopia/Eritrea.  In 1973,

he left Ethiopia because he feared persecution.  Certified Administrative Record (CAR) 51-52.

He moved to Italy and applied for asylum to the United States in 1980.  Id.  As part of his refugee

application, petitioner completed a "I-590" Form issued by the Immigration and Naturalization

Service (INS).[1]  Id.  There, he listed his date of birth as July 28, 1952.  Id.  He listed his place of

birth as Asmara, Ethiopia.  Id.  Petitioner was admitted to the United States as a refugee on

October 9, 1980.  Id.

    In November 1989, petitioner applied for United States citizenship in San Francisco.  Id.

at 92-95.  In his INS Form N-400 entitled "Application to File Petition for Naturalization," he

---

[1]  The INS was abolished in March 2003 and its functions split into two separate agencies
within the Department of Homeland Security, one of which, the United States Citizenship and
Immigration Services (USCIS), is the respondent in this case.  See Homeland Security Act of
2002, Pub. L. No. 107-296, 116 Stat. 2135, 2142 (2002), 6 U.S.C. §§ 101-557.  USCIS carries
out most of the functions previously performed by the INS.  Wong v. Napolitano, No.
CV-08-937-ST, 2010 WL 916274, at *2 n.1 (D. Or. Mar 10, 2010).

2 - OPINION & ORDER

again stated that his date of birth was July 28, 1952.  Id.  Petitioner's application was approved,

and he petitioned the United States District Court for the Northern District of California to

become a naturalized citizen.  Id. at 88-90.  In his naturalization petition, INS Form N-405, he

again asserted that his date of birth was July 28, 1952.  Id.  His petition was approved and

petitioner became a naturalized citizen on June 5, 1990, with a certificate of naturalization,

reflecting a July 28, 1952 birth date, issued by the United States District Court for the Northern

District of California.  Id. at 87.

On September 28, 2009, petitioner submitted a Form N-565, Application for

Replacement Naturalization/Citizenship Document, to USCIS.  Id. at 81-85.  There, he listed his

birth date as July 28, 1944, and indicated that he was applying for a new certificate of

naturalization because his original certificate was incorrect.  Id. at 81.  In the section requesting

an explanation of why his certificate was incorrect, petitioner explained:

> Born July 28, 1944, baptized at age 40 days, raised and always a member of
> Christian Coptic Orthodox Church.  My date of birth goes with the Church's
> calander [sic].  Until recently, I was using the European calander [sic], I requested
> a documentation to correct it, (please see attached), signed by my father, my
> uncle, my father's cousin.

Id. at 82.

The document he attached is a "Certificate of Birth" issued by the Public Registration

Office of the Municipality of Asmara.  Id. at 84.  It states:  "This record of birth is an exact

translation of birth record as found in the birth register in Public Registration Office of Zoba

Maakel (Municipality of Asmara)."  Id. at 84.  It lists several pieces of information including

petitioner's full name, his mother's name, his nationality, and his gender.  Id.  It states that his

birth date is "28-July-1944."  Id.  It indicates that the "public Registration Office of the Zoba

3 - OPINION & ORDER

Maakel, Asmara Eritrea made the registration of Birth on 30-09-2004," meaning September 30, 2004.  Id.  It is signed by the Head of the Public Registration Office and is dated "06-10-2004," or October 6, 2004.  Id.

On November 16, 2009, USCIS denied plaintiff's Form N-565 application on the grounds that petitioner had failed to show that there was a clerical error made in preparing the naturalization certificate, or that the certificate did not conform to the facts shown on the naturalization petition, which are the only grounds allowed under 8 C.F.R. § 338.5(a) for USCIS to correct a naturalization certificate.  Id. at 78-79.

On November 19, 2009, petitioner appealed the USCIS's denial of his Form N-565 Application to the USCIS's Administrative Appeals Office (AAO).  Id. at 73-74.  In the section asking for a statement explaining any erroneous conclusion of law or fact in the decision being appealed, petitioner stated:

> At the time I applied and time I became a US citizen, it was impossible to get any kind of documentation from my country of origin.  It was occupied by Ethiopian military government, supported by Comunist [sic] countries, and I was ressetled [sic] (refugee) in the United States, both my parents were in Sweden with my sister.

Id. at 74.

On April 10, 2010, the AAO dismissed petitioner's appeal without prejudice.  Petitioner was allowed to petition the district court to amend his naturalization certificate pursuant to 8 C.F.R § 334.16(b).  Id. at 70-72.

On January 31, 2012, petitioner filed the instant petition with this Court.  In the petition, he states that the country of his birthplace, Eritrea, was integrated to Ethiopia.  Petition at 1 (Dkt #1).  He continues:

4 - OPINION & ORDER

> Until it was internationally recognized as independent, I was filing as Ethiopian, with the same date of birth on any document.
>
> When my parents returned to Eritrea from where they lived with my sister in Sweden, I was able to get a corrected birth certificate.
>
> I am applying to the United States District Court (Portland Division) to approve the correction of my birth date according to the authenticated document by the Consular Officer of American Embassy in Asmara.

Id.

Attached to the petition is a slightly different copy of the Certificate of Birth issued by the Public Registration Office of the Municipality of Asmara.  Id. at 2-3; CAR 65-66 (same copy of the Certificate of Birth attached to the petition).[2]  Among other things, it is signed by a different Head of the Public Registration Office.  Id.  It states it was issued on "25-03-2011," meaning March 25, 2011, rather than October 6, 2004.  Both documents show petitioner's birth date as July 28, 1944 and reflect that the birth was registered with the public registration office on September 30, 2004.

The version of the birth certificate appended to the petition in this Court includes a separate General Authentication Certificate from the American Embassy in Asmara, Eritrea, attesting that Luul Sium of the Authentication Unit of the Ministry of Foreign Affairs was empowered to issue the birth certificate.  Id. at 4.[3]

At the August 22, 2012 hearing on the petition, petitioner submitted a copy of a document written in Tigrinya, and a corresponding English translation of the document.  Ex. D (English

---

[2]  The original of this Certificate was admitted into evidence at the August 22, 2012 hearing as Petitioner's Exhibit 1.

[3]  The original of this page is also part of Petitioner's Exhibit 1.

translation) & Ex. E (in Tigrinya) to Pet'r Ex. 6 (Certificate of Translator Sonya Damtew). The English translation of this document shows it to be a record of petitioner's September 24, 2004 request to Judge Alem Issak of the Municipal Court of the Central Region of the Country of Eritrea to have his birth recorded, and the court's decision regarding that request. Id.

The translated version states that petitioner's birth had not previously been recorded in the registry and that petitioner requested to have his birth recorded. Id. It recites that three witnesses provided sworn affidavits that they knew the petitioner and knew that the petitioner was born on July 28, 1944 either "from" or "of" his father Kifle Habtemariam and his mother Zufan Imehazion. Id. At the August 22, 2012 hearing, petitioner identified the first witness, Habte Gebreindreas, as his father's cousin, who at the time of giving this sworn testimony was 62 years old. Id. Petitioner identified the second witness as his uncle, who was 64 at the time he provided his testimony. Id. The third witness was petitioner's father, who was 78 at the time he provided his sworn statement. Id.

The section for the "Courts [sic] Decision" states that the court, "having heard and proven the sworn affidavits of [petitioner's] three witnesses" decided that petitioner's name was "Gebre B," his father's name was "Kifle Habtemariam," his mother's name was "Zufan Imahazion," his place of birth was "Zuban Una," and his date of birth was "28-07-1944." Id. The document then states "[t]herefore, according to the Civil Laws of Birth Recording and Registration 63/2 it is decided that his birth will be recorded in the court birth registry." Id. The document bears a seal of the court and the judge's signature. Id.

Petitioner also submits Ethiopian school records, translated into English from Italian. Pet'r Exs. 4 & 5 (Italian versions); Exs. B & D to Pet'r Ex. 7 (English versions appended to

Certificate of Translator Cinzia Corio-Holman).  These are explained in more detail below.

Petitioner also submits a copy of his Kaiser medical insurance card, showing a birth date of July 28, 1944.  Pet'r Ex. 8.  A copy of his Oregon driver's license, also showing a birth date of July 28, 1944, is in the CAR.  CAR 8; see also Pet'r Ex. 12.

Petitioner also provides documents showing that in 2009, he represented to the Social Security Administration (SSA) that his birth date was July 28, 1944, and that the SSA has accepted that date for its records.  Pet'r Exs. 10, 11.

Additionally, petitioner submits a May 8, 2012 statement from his mother, in Tigrinya, translated into English, made to the Ministry of Foreign Affairs in the Regional Administration of Geza Banda.  Pet'r Ex. 3 (original written statement in Tigrinya); Ex. B to Pet'r Ex. 6 (English version).  The statement recites petitioner's mother's evidence of petitioner's July 28, 1944 birth date and is discussed in more detail below.  Ex. B to Pet'r Ex. 6.

## STANDARDS

The petitioner bears the burden of showing that the date on his or her certificate of naturalization is incorrect and that the new date asserted is actually the correct date.  Kouanchao v. USCIS, 358 F. Supp. 2d 837, 838 (D. Minn. 2005);  Binh Quang Le v. USCIS, No. C11–01871 HRL, 2011 WL 3678909, at 2 (N.D. Cal. Aug. 22, 2011).  The regulations are resistant to changing birth dates for any reason other than clerical error.  Varghai v. INS, 932 F. Supp. 1245, 1246 (D. Or. 1996).

In a 2008 District of Minnesota case, the court, citing several other district court cases, noted that as to the standard of proof, courts have used a variety of phrases, such as "unequivocal evidence," "good cause," or "clear and convincing" without much discussion.  Hussain v. USCIS,

541 F. Supp. 2d 1082, 1085-86 (D. Minn. 2008) (stating that "courts have never been very specific about what type of proof would meet the various standards").

In <u>Hussain</u>, the court explained that when looking past the discussion of standard of proof in the relevant cases, and focusing on the facts, a pattern could be detected where when denying petitions to amend, the evidence was quite weak, but in granting petitions, there was "strong evidence that the birth date on the certificate was incorrect, and there was no indication that the petitioner had acted fraudulently or in bad faith." <u>Id.</u> at 1086. The court explained that while few courts had used the phrase "clear and convincing," that is the standard most of them actually applied because in cases where petitions were granted, the "petitioners submitted evidence not merely that it was more likely than not that the birth date on the petition was incorrect, but evidence that could place in the ultimate factfinder an abiding conviction that it was highly probable that the birth date on the petition was incorrect." <u>Id.</u> at 1087 n.2 (internal quotation omitted).

The <u>Hussain</u> court used the following analysis to evaluate the petition before it:  the petition should be granted when (1) there is clear and convincing evidence that the birth date on the certificate of naturalization is wrong; (2) there is little or no evidence that the petitioner acted fraudulently or in bad faith either when he or she initially provided the incorrect birth date to immigration authorities or when he or she later sought to amend the certificate of naturalization; and (3) there is reliable evidence supporting the birth date that the petitioner now alleges is correct. <u>Id.</u> at 1087.  Other courts have also used this analysis. <u>E.g.</u>, <u>Madidi v. USCIS</u>, No. 2:10–cv–00612–RLH–PAL, 2011 WL 6415370, at *2 (D. Nev. Dec. 15, 2011); <u>Pyun v. Jarina</u>, No. 07-2817-P, 2009 WL 1636272, at *3 (W.D. Tenn. June 11, 2009).

And, as recently as May of this year, the Northern District of California cited Hussain and
other cases regarding the standard of proof and concluded that "there is no real difference
between the standards (and the names used to label them). What is important is that the
evidentiary standard applied - to make an amendment - is a high one." Kennedy v. USCIS, No.
5:11-cv-02407-EJD, 2012 WL 1831599, at *9, _____ F. Supp. 2d _____ (N.D. Cal. May 18,
2012). The Kennedy court explained that the high standard for the petitioner was "grounded in
the notion that naturalization certificates are important documents on which government and
private entities rely." Id. (footnote omitted) (noting further that "[o]ne specific concern is that
amendments to the naturalization records may hasten the availability of government benefits for
senior citizens. The high standard is thus critical to guard against fraud and prejudice to the
government.") (internal quotation marks omitted). I adopt the Hussain analysis.

DISCUSSION

I. Jurisdiction

District courts have jurisdiction to amend naturalization orders issued before the
Immigration Act of 1990 became effective because those orders were actually issued by the
courts. Binh Quang Le, 2011 WL 3678909, at * 1 (citing In re Shrewsbury, No. 94-16736, 1996
WL 64988, at * 1 (9th Cir. Feb. 12, 1996) (explaining that before the enactment of the 1990 Act,
district courts had jurisdiction to naturalize citizens and also had statutory authority to amend
naturalization orders; because "the order naturalizing this petitioner was a court order, the
[district] court had jurisdiction under the prior statute to amend it")); see also Kennedy, 2012 WL
1831599, at *8 (citing Shrewsbury for the proposition that the district court has jurisdiction to
amend pre-1990 naturalization orders).

9 - OPINION & ORDER

The Immigration Act of 1990 transferred the power to naturalize from the judiciary to the executive branch for naturalization applications filed after October 1, 1991. See Imm.& Nat. Act of 1990, Pub. L. No. 101-649, § 401(a), 104 Stat. 5046 (Nov. 29, 1990) (codified at 8 U.S.C. § 1421(a)). Here, as in Shrewsbury, petitioner's certificate of naturalization was issued by a court before the effective date of the Immigration Act of 1990 and thus, this Court has jurisdiction to amend it.

II. Statute of Limitations

Respondent argues that the appropriate statute of limitations is six years and that this petition is untimely because the evidence established by the record and by petitioner's own testimony at the hearing was that he learned of his alleged 1944 birth year in 2004 and did not file this petition until January 2012. According to respondent, the law in effect at the time petitioner's naturalization certificate was issued empowered district courts to amend judicial certificates of naturalization "within the time prescribed by the rules of procedure or statutes governing the jurisdiction of the Court to take such action." 8 U.S.C. § 1451(i) (1990), repealed Imm. & Nat. Act of 1990, Pub. L. No. 101-649, § 401(a), 104 Stat. 5046 (Nov. 29, 1990). Federal law provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

In response, petitioner argues that this is a petition to a federal court to correct an error in an official court record, not a true "civil action." Petitioner acknowledges that a federal agency, the Department of Homeland Security, has an interest in the matter, but he contends that such interest does not convert the action into a "claim against the United States" governed by section

2401(a).

Neither party supplies any controlling, or persuasive, authority to support their respective position.  Because I conclude that the petition fails on the merits, I decline to address the statute of limitations argument.

III.  Merits of the Petition

A.  Evidence that the Birth Date on the Certificate is Wrong

Respondent argues that petitioner has not produced clear and convincing evidence that the July 28, 1952 date of birth on his naturalization certificate is erroneous.  I agree.

First, petitioner articulated three entirely different explanations for the allegedly incorrect birth date, casting doubt on his assertion that the certificate date is wrong.  He initially blamed a "calendar translation" error.  He then cited the inability to obtain documentation of his birth date at the time he applied to become a United States citizen because Eritrea was occupied by the Ethiopian military government and his parents, who were living with his sister in Sweden, were unable to return to Ethiopia/Eritrea to obtain documentation of his date of birth until after his naturalization.  CAR 73-74.

He provided his third reason in his July 13, 2012 Hearing Memorandum (Dkt #14) where he stated that he lied about his age when obtaining a passport to leave Ethiopia in 1973.  Pet'r July 13, 2012 Hr'g Mem. at 3.  He explained that Ethiopia did not issue birth certificates until at least 1953.  Id.  He fled Ethiopia in 1973 in the middle of the Ethiopia-Eritrea civil war without ever having obtained a birth certificate.  Id.  He paid a "middleman" to obtain a passport to leave Ethiopia.  Id.  He stated that he provided a birth date based on memory of what his family had told him.  Id.  He was fairly confident of the month and day, but not of the year.  He was aware

that he was probably older than 21, but he wanted to seem younger in order to increase his

prospects of finding a wife in the Ethiopian/Eritrean refugee community abroad.  Id.  According

to petitioner, the marriageable age for young men in Ethiopia at that time was in the early 20s.

Id.  He stated that he did not want to be older than 23 "or so" by the time he could get settled in

the Eritrean community in Italy, obtain more education, and find a job.  Id.  Thus, he provided the

1952 birth year, making him 21 at the time.  He has used that 1952 birth date ever since.

   In contrast, at the hearing, petitioner testified that in 1973, he had to pay someone to

obtain a passport, but he could not remember what information he provided other than his name.

He did not remember giving this person his birth date and stated that the passport creator made

up the date.  He had no understanding of the year of his birth and, according to his testimony, no

documents showing his date of birth.  He believed the day of his birth was one week after the

"Saint Mary's" holiday in the month of July.  He clearly stated that he did not know how the year

1952 was chosen.  It was only upon prompting from counsel that he said one of the reasons he

wanted to appear younger was to marry a younger woman because "this is what everyone does."

He stated that at the time he entered the United States, he had no documents other than his

passport showing a birth date.

   The fact that petitioner has provided three different explanations for why the 1952 year is

allegedly erroneous makes his claim of error less plausible.  His failure to articulate a single,

consistent explanation for the alleged error suggests he has been less than forthcoming in his

attempts to change the 1952 year on his naturalization certificate.

   Second, even considering each explanation in isolation, the record does not establish with

clear and convincing evidence that the 1952 year is wrong.  As indicated above, in his initial

12 - OPINION & ORDER

application to amend his naturalization certificate, petitioner wrote that his July 28, 1952 birth

date was incorrect because he had always used the European calendar but his birth date "goes

with" the Christian Coptic Orthodox Church calendar.  CAR 82.  The CAR contains a conversion

table showing the relationship between the Gregorian/European calendar and the Ethiopian

calendar.  CAR 67-68.  If petitioner's July 28, 1952 birth date is a Gregorian date, the

corresponding Ethiopian date is November 21, 1944.  Id.  Thus, while the year changes to 1944,

it is not July 28, 1944.  As a result, the "calendar" explanation for the purported error in the

certificate of naturalization is suspect as the conversion does not result in the equivalent month

and date.[4]

Next, he claimed that when he applied to become a United States citizen, it was

impossible to obtain documentation from Eritrea because it was occupied by the Ethiopian

military government and his parents were living with his sister in Sweden.  CAR 73-74.

There are several problems with this explanation.  First, it does not address why petitioner

claimed the 1952 date in the first place.  Second, the background information petitioner provided

in his earlier 1980 refugee application comported with the 1952 date he provided at that time.

Notably, the record shows he entered primary school in 1958, CAR 51, which is consistent with a

1952 birth year because he would have been about six years old.  Third, despite petitioner's

---

[4]  The exhibit also shows that when petitioner's alleged July 24, 1944 birth date is entered
as a Gregorian date, the corresponding Ethiopian calendar date is November 21, 1936.  CAR 67.
When petitioner's alleged July 24, 1944 birth date is entered as an Ethiopian calendar date, the
corresponding Gregorian date is April 6, 1952, and if petitioner's July 24, 1952 birth date is
entered as an Ethiopian calendar date, the corresponding Gregorian date is April 6, 1960.
http://www.funaba.org/en/calendar-conversion.cgi.  Thus, regardless of which way the
conversion is made, there is no relationship between the July 24, 1952 and the July 24, 1944
dates.

assertion that he could not obtain evidence regarding his correct date of birth because his parents were in Sweden and not in Ethiopia, the Biographic Information Forms petitioner completed in 1980, 1982, and 1988 stated that his parents resided in Asmara, the city of his birth, not in Sweden as he claims now.  CAR 39, 42, 54.

At the hearing, petitioner clarified his parents' status during this time.  He stated that during the early to mid-1980s, his parents moved back and forth from Ethiopia/Eritrea to Sweden where they stayed between one and three years.  When he became a citizen in 1990, his parents still spent part of their time in Ethiopia/Eritrea.  Petitioner testified that although his parents spent part of their time in Eritrea before Eritrean independence in 1991-93, they could not obtain documentation of his birth because of petitioner's past pro-Eritrean independence political activities.  But, he also testified on cross-examination that before 1990, it was possible for his parents to register his birth but he had no need of that and just did not think about it.

I accept petitioner's clarification of the apparent inconsistency between his prior representations that his parents lived in Asmara and his representation that he was unable to obtain documentation of his birth because his parents were in Sweden.  However, this explanation still suffers from the other problems I noted above:  it does not explain why the 1952 year is incorrect and it is inconsistent with the school information provided by petitioner in 1980 showing that he started primary school in 1958.

As to the third explanation for why 1952 is an erroneous year based on his desire to marry a younger woman, respondent argues that even if the initial reason for providing a false birth year to obtain a bride were true, that reason no longer existed when petitioner was later completing his asylum and naturalization petitions.  The I-590 form shows that in 1980, when petitioner applied

14 - OPINION & ORDER

for asylum, he was still single.  CAR 51.  Giving petitioner the benefit of the doubt, appearing

younger for marriage purposes may still have been important to him at that time.  However, by

the time he sought naturalization in 1989, he had already been married, then divorced, CAR 93,

and his motive for continuing to lie about his age presumably diminished.

Additionally, as to this "marriage" justification for the 1952 birth year, making oneself

eight years younger is quite significant and strains credulity.  Moreover, it is unclear why a false

birth date in petitioner's passport was actually necessary to appear younger for marriage purposes.

Thus, I agree with respondent that petitioner's "marriage" rationale for the allegedly incorrect

1952 birth year is not credible, at least after he had already been married.

Petitioner relies on the recently submitted education records to support his position that

the 1952 birth year is incorrect.  Petitioner states that in the 1960s in Ethiopia, basic education

consisted of six years of primary school, normally entered at age 7, and six years of secondary

education.  According to petitioner, a student could enter four years of polytechnical training

following completion of the fourth year of secondary school.  Pet'r July 13, 2012 Hr'g Mem. at

5.[5]  This means that if the student began primary school at age 7, the student would finish

primary school at age 13, assuming the school year begins in the late summer/fall and ends in the

late spring/early summer, and thus, the student would complete four years of secondary school at

---

[5]  The report he cites was presented by the Ministry of Education and Fine Arts of the
Imperial Ethiopian Government, to the 31st Session of the Conference of Public Education in
Geneva, Switzerland in July 1968.
http://www.ibe.unesco.org/National_Reports/Ethiopia/nr_pp_et_1968_e.pdf.  It reports on
Education Development in Ethiopia in 1967-68.  It states that at that time, there were six years of
primary education, six years of secondary education (in two cycles of 2 and 4 years), and 4 or 5
year courses at the third level for a first degree.  In addition, there was a polytechnic course of 4
years duration, with entry from the 4th year of secondary education.  Technical courses at the
secondary level normally lasted four years.  Id.

age 17.

Petitioner argues that if he had been born in 1952, he would likely have started primary school in the fall of 1959 at age 7, and "finished his second year of secondary education at age 16 in 1965." Pet'r July 13, 2012 Hr'g Mem. at 5. Petitioner's calculations are incorrect. If he were born in 1952 and if started primary school at age 7 in 1959, he would have finished six years of primary school in 1965, at the age of 13 (or possibly even age 12 considering his birthday appears to be in July), not at age 16. And, petitioner would have finished his second year of secondary education at age 15 in 1967, not in 1965. And again, given his July birth date, he would likely still have been 14 at the end of that school year. Additionally, it is unclear where petitioner is going with his argument. As noted, he states that a student could enter technical training after four years of secondary school. Yet, he focuses his discussion on entering technical training after only two years of secondary school.

Next, petitioner states that "[c]ompletion of even a second year of technical school could not have occurred until he was 18." Id. This is not necessarily correct. If a student could enter technical school after two years of secondary school, which petitioner seems to suggest, the student would finish a second year of technical school at age 17. If, however, petitioner means that the second year of technical school follows four years of secondary school, then his argument is correct.

Petitioner argues that "[b]ased on the Ethiopian school certificates and available basic historical data, it appears highly unlikely that Mr. Kifle could have been born in 1952." Id. But, the "Ethiopian school certificates" he relies on are, at best, confusing and they do not support his argument.

16 - OPINION & ORDER

The first school record states that petitioner, "born on February 28, 1947" in Eritrea, obtained a "diploma" or "pass certificate" during the regular exam session on May 27, 1968, for "Technical Specialization" from "International Technical-Professional Institute Guglielmo Marconi." Ex. B to Pet'r Ex. 7. His asylum application suggests that this was a one-year course of study, CAR 51, and he confirmed this in his hearing testimony, adding that this was a night school program.

The second school record is a certificate of attendance dated January 10, 1972 from the "Institute for Technical and Commercial Studies and for Surveyors Vittorio Bottego," in Asmara, Ethiopia/Eritrea, signed by the institute's principal, which certifies that petitioner, born on "February 28, 1949, during the school year 1967/1968 has attended this institute in the second year class of the course for surveyors." Ex. D to Pet'r Ex. 7.[6] Petitioner explained at the hearing that he attended Bottego at the same time he attended Guglielmo Marconi.

Petitioner testified that he attended Bottego for four years, including one year he had to repeat. The fact that the Bottego certificate certifies petitioner's attendance for just one year, even though it is dated in 1972 and could have certified his attendance for several years, creates doubt about the accuracy of the Bottego certificate or petitioner's testimony, or both.

Notably, the dates in these school records are inconsistent with the dates for Guglielmo Marconi and Bottego that petitioner listed in his asylum application. CAR 51. There, petitioner listed his primary school years as 1958-1964, his "junior secondary" as 1964-66, and then Guglielmo Marconi as overlapping with his junior secondary in 1965-66. Id. He also listed

_____

[6] Petitioner testified that he possessed these documents when he left Eritrea/Ethiopia in 1973, contradicting his earlier testimony that at that time, he had no documents showing his date of birth.

having attended Bottego from 1966-69, which would be three years and not the four he testified

he attended.  Id.  It cannot be reasonably disputed that the evidence regarding petitioner's

schooling, including his recitation of his schooling in his 1980 asylum application, the recently

produced records from Guglielmo Marconi and Bottega, and his testimony, are nothing short of

messy.

Petitioner concedes that the record shows four different birth dates for him (July 24, 1944

as he alleges, February 28, 1949 and February 28, 1947 as shown in the school documents, and

July 24, 1952 in his immigration documents).  Yet, he argues that "[i]t seems clear from those

third party course of business documents that Mr. Kifle was over 21 years of age when he

obtained his Ethiopian passport in 1973 and that the 1952 year of birth on that passport, and on

his Naturalization Certificate, is wrong."  Pet'r July 13, 2012 Hr'g Mem. at 8.  I disagree.  For the

reasons explained in the preceding paragraphs, the school records do not support petitioner's

argument.  Not only do they contain conflicting birth dates for which petitioner has no

explanation other than when attending those schools he just "put anything, anything that came to

me at the time," the documents do not, even when considered with petitioner's testimony, offer

clear and convincing evidence that the 1952 birth year is wrong.  As indicated, the educational

evidence is simply too contradictory and confusing to clearly establish that the 1952 birth year is

wrong.

Petitioner does not provide clear and convincing evidence that the 1952 year is

inaccurate.  First, he has offered three separate reasons for the alleged error.  I agree with

respondent that this alone casts suspicion on petitioner's claim.  Second, the record does not

support the reasons articulated by petitioner:  the calendar conversion does not result in the July

18 - OPINION & ORDER

28, 1944 date, and the immigration records indicate that his parents lived in Ethiopia/Eritrea at the time he says they lived in Sweden. While petitioner's testimony clarified this discrepancy, the articulated reason that he was unable to obtain documentation of his birth while he parents were out of the country provides no explanation for why the 1952 year is erroneous. The "marriage" reason may have been justified initially upon leaving Ethiopia in 1973, but it is not clear on the present record if he needed to continue with that rationale after having resided in Italy and at the time he was petitioning for asylum to the United States, or later, after he had been married already when he applied for naturalization. Third, the educational evidence does not support a conclusion that the 1952 date is erroneous. The most telling is the date when he entered primary school in 1958. CAR 51. It is consistent with a birth year of 1952. And, given the ambiguities in the actual school records, they do not show, by clear and convincing evidence, that the 1952 date is wrong.

Petitioner seeks judicial notice of several facts regarding country conditions in Ethiopia and its history. Respondent does not object. For purposes of this petition, I accept the asserted facts as true, even though I have doubts about whether some of them are appropriately judicially noticed under Federal Rule of Evidence 201. Having considered those facts, and crediting petitioner's testimony, as well as that of his witness Habte Gebreindreas, that the historic practice in Ethiopia/Eritrea at the time he was born was that formal birth certificates were not recorded at the time of birth, that the date and year of birth were largely immaterial unless one needed a passport, and that witnesses are used to establish a date of birth for birth registration when one is needed, I find that there is credible evidence that petitioner, and his parents, may not have known with certainty the exact year he was born. Thus, I find that it is possible that petitioner may not

have been born in 1952.

Nonetheless, for the reasons explained above, that possibility is not enough for petitioner to meet his burden of establishing by clear and convincing evidence that the 1952 year shown on his naturalization certificate is erroneous.  The burden on petitioner is high.  Petitioner has created some questions regarding the validity of the 1952 date, but has failed to meet the requisite standard of proving that the 1952 year is wrong.

B.  Evidence of Fraud/Bad Faith in Initial Immigration Application or in Seeking Change

Based on petitioner's own representations, he has been aware at all times that he was not born in 1952.  I agree with petitioner that if his motive in initially changing his birth year was to improve his marriage prospects, there is no evidence of bad faith at the time of his initial asylum application.  See Kouanchao, 358 F. Supp. 2d at 838 (no evidence of bad faith in immigration application process when, forty years earlier, petitioner obtained a false birth certificate in order to register for high school and thereafter used the false date of birth).

Petitioner argues that his present motive for seeking to change his naturalization certificate is not in bad faith.  He states that he works for the United States Postal Service (USPS) where he has pension benefits based on seniority, not age, which will increase modestly in value if he works an additional two years.   He submits an August 30, 2006 statement from the USPS showing that he is covered by the Federal Employees Retirement System (FERS) and that he meets the age and service requirements for an optional voluntary retirement under FERS.  Pet'r Ex. 9.  The second page of this exhibit is a statement from the National Retirement Counseling System and shows the estimate of petitioner's retirement annuity calculated as of August 2006. Id.  It shows a birth date of September 28, 1944.  Id.  It also shows that March 19, 1994 was

when he began working for the postal service.  Id.

Contrary to petitioner's representation that his retirement benefit is based on seniority, not age, the August 30, 2006 statement indicates that FERS retirement annuities are based on a combination of age and seniority.  Under FERS, one may retire with a FERS benefit under the following scenarios:  (1) at the minimum retirement age, indicated as 55 through 57, with 30 years of service; (2) age 60 or older with at least 20 years of service; or (3) age 62 or older with at least 5 years of service.  Id.  A reduced annuity benefit is available for those employees who have attained the minimum retirement age (55-57) and who have at least 10 years of service.  Id.

Thus, in August 2006, if petitioner was born in 1952, he would have been 54 years old and unable to obtain his full FERS annuity benefit under any of the above scenarios, and further unable to obtain the reduced annuity benefit.  With a 1944 birth year, he would have been 62 years old and able to obtain a full annuity.  By changing his birth year to 1944, which FERS has apparently accepted, he was able, in 2006, to change his eligibility for retirement benefits. Although this does not necessarily reveal a present fraudulent intent in regard to changing his naturalization certificate, it does show that petitioner may have manipulated his birth date in the past to position himself to obtain benefits to which he was not otherwise entitled at the time.

Petitioner's Exhibit 11 is his May 2009 "Application Summary" for Medicare hospital insurance coverage.  Pet'r Ex. 11.  There, petitioner reported his birth date as July 28, 1944.  Id. Petitioner's Exhibit 10 is a report by the SSA confirming petitioner's request for benefit information.  Id.  It states that petitioner's date of birth is July 28, 1944.  Id.  The only reasonable conclusion derived from the record is that the SSA listed petitioner's birth date as July 28, 1944 as a result of petitioner himself citing that date in his "Application Summary."  As long as the

21 - OPINION & ORDER

SSA has accepted the 1944 date as correct, I cannot say that petitioner's current motive in seeking to change his naturalization certificate is to obtain SSA benefits to which he is not otherwise entitled. But, given that the SSA relied on petitioner's self-report for his birth date, the SSA's acceptance is not reliable evidence that the 1944 date is correct.

Additionally, petitioner states that while he used the 1952 birth year consistently since 1973, "in the last few years," he became concerned about knowing his precise age for medical purposes. Pet'r July 13, 2012 Hr'g Mem. at 4. He testified at the hearing that he needed to correct his age because certain prescription drugs are based on age. In his memorandum, he explained that his health care concerns prompted his family, in 2004, to obtain for him a non-exemplified Eritrean document that "underlies" the Eritrean birth certificate found at CAR 65-66. Id. He states that his receipt of those documents from his family was when he first knew his correct date of birth. Id. He then obtained a new medical insurance card and a new driver's license. But, apparently, he then attempted to obtain a new United States passport and "[t]hat effort in 2011 required him to obtain the certified and exemplified English language copy of his birth certificate." Id.

Petitioner's explanations are not convincing. It is unclear why, once petitioner himself learned of his allegedly correct 1944 birth year, it became necessary to make corrections on any official record. Furthermore, once he corrected his date of birth with Kaiser, I fail to see the need for changing his naturalization certificate. Petitioner fails to establish the correlation between his stated medical concern motive and the amendment of his birth date on his naturalization certificate.

As for obtaining a new passport, petitioner testified that his United States passport, which

showed his birth year as 1952, consistent with his naturalization certificate, expired in 2010 and

2011.  To have a passport renewed, or re-issued, with the 1944 birth year, he must change the

birth year on his naturalization certificate because, he explained, the two documents must be

consistent.  Although he could have renewed his passport with the 1952 birth year and thus, have

no impediment to traveling to Eritrea to visit his aging parents, when asked by respondent's

counsel why he did not renew his passport with the 1952 year, petitioner answered simply that

"it's complicated."

I agree with petitioner that the record does not support a finding of bad faith or fraud in

his use of an incorrect birth date in his initial asylum application.  However, his argument that he

wants to change his naturalization certificate for "health-related" reasons is unpersuasive.   And,

his current argument that he wants to change his naturalization certificate in order to obtain a

passport with the 1944 date is unavailing because petitioner fails to indicate why this is necessary

or important.

While not necessarily exposing a fraudulent motive or bad intent, petitioner's inability to

offer an explanation with substance and credibility as to why he wants to change his

naturalization certificate creates some doubt as to the reason behind the petition.

C.  Evidence that 1944 is the Correct Year

Petitioner argues that because contemporaneous birth records were not kept in his country

at the time he was born, the verification of his 1944 birth date from the current government of

Eritrea, certified by its foreign ministry and authenticated by a consular officer of the United

States State Department, should be accepted as the competent record of a sovereign government.

In addition, he notes that he has gone beyond the official Eritrean birth document and provided

the formal record of his mother's sworn testimony before an Eritrean official explaining the source of the information on which the official birth record is based.  Thus, he contends he has offered reliable evidence that the correct year of his birth is 1944.

Respondent notes that the evidence petitioner relies on in support of his 1944 birth year consists only of recently-created documents that are not contemporaneous with his birth.  Cases suggest that "delayed" birth certificates, meaning registrations of births occurring years after a birth, are less credible than those made more contemporaneously with the birth.  See Kouanchao, 358 F. Supp. 2d at 838 (noting that delayed birth certificates "offer the opportunity for fraud"); Moua v. Bowen, No. CV-F-87-008-REC, 1988 WL 252007, at *1-2 (E.D. Cal. June 10, 1988) (ALJ in social security case did not err when he gave no weight to "delayed" birth certificate showing different date of birth than claimant's immigration documents and which was issued at least thirty-five years after claimant's date of birth and when claimant's testimony about document's origin was contradictory).

The Eritrean birth certificate was issued on the basis of the statements of three witnesses, but the birth certificate itself provides no explanation of how, sixty years later, they accurately recalled that the correct date was July 28, 1944.  The ages of the witnesses recited on the birth certificate indicate that when petitioner was allegedly born in 1944, one of the witnesses was two years old and the other was four years old.  Thus, it is doubtful that these two witnesses relied on their own independent recollection of his birth.

Petitioner identified one of the witnesses, Habte Gebreindria, as his father's cousin. Gebreindria appeared by telephone from Eritrea at the August 22, 2012 hearing and identified himself as plaintiff's cousin.  He remembered helping to procure petitioner's birth certificate in

24 - OPINION & ORDER

2004.  He acknowledged that he has no independent memory of when petitioner was born and in attesting to petitioner's 1944 birth year, he relied on information provided by his aunt and his mother.  He stated that he grew up with petitioner.

Petitioner's mother's May 8, 2012 statement lists the following "true evidence" supporting petitioner's July 28, 1944 birth date:  (1) her older brother was a soldier in the Italian army who returned to his village when the Italians lost the war to the British in 1941; (2) in 1942, her younger brother was born; and (3) in 1943 she was married.  Pet'r Ex. 3 (in Tigrinya); Ex. B to Pet'r Ex. 6 (English version).  She then states that petitioner was born on July 28, 1944 under the European calendar, a day after Saint Medhinealem's day, and a week after the celebration of Saint Mary's day.  Id.

As indicated above, petitioner bears the burden of proving by reliable evidence that the 1944 birth year is correct.  Given that the 2004 Ethiopian birth certificate was issued sixty years after petitioner's alleged 1944 birth, it is less reliable than a birth certificate issued more contemporaneously with petitioner's birth.  Notwithstanding the undisputed evidence that Ethiopia did not routinely issue birth certificates at the time petitioner was born, it is important to note that according to petitioner's own statement, Ethiopia began recording births in 1953.  Even accepting that he was born in 1944, petitioner could have obtained a birth certificate between 1953 and 1973 when he left the country.

The 2004 Eritrean birth certificate is based on the testimony of three witnesses, one of whom conceded that he had no independent recollection of petitioner's birth.  It appears that the Eritrean birth certificate's recitation of the 1944 birth year is, in the end, based on the opinion of petitioner's mother, as articulated in her May 2012 statement.  But, petitioner testified during the

25 - OPINION & ORDER

hearing that when he left Eritrea in 1973, his parents did not know the year he was born.  It is unclear why petitioner's mother was able to recall the events in 1941-43 accurately in 2004, but in 1973 did not know the year petitioner was born.

Additionally, contrary to petitioner's claim, the Ethiopian school records do not support a 1944 birth date.  First, they themselves contain birth years other than 1944.  Next, if petitioner was born in 1944, he would have, according to his own representations, started primary school in 1951 at age 7.  He would have completed two years of secondary education at age 15, in 1959, and 4 years of secondary education at age 17 in 1961.  If he went to technical school for two years after his second year of secondary school, he would have gotten his surveying diploma in 1961, at age 17.  If he went to technical school for two years after his fourth year of secondary school, he would have completed technical school in 1963 at age 19.  Even if he studied for four years for the technical degree, following four years of secondary school, he would have finished at age 21, in 1965.  Although he testified at the hearing that he had to work for a time with his father at his father's butcher shop, he was unable to state with any specificity how old he was when he entered the technical school(s) or how long he worked, making his testimony somewhat unreliable.  The educational records do not support a 1944 birth date.

Finally, respondent notes that assuming that petitioner learned in 2004 that his 1952 birth year was incorrect, he provides no explanation for why he waited five years to begin the process of trying to change his naturalization certificate.  This negatively affects his credibility.

In summary, petitioner fails to meet his burden of showing with clear and convincing evidence that the 1952 year is incorrect and fails to provide reliable evidence that the 1944 year is correct.  Additionally, while I do not find that he seeks to amend his naturalization certificate in

26 - OPINION & ORDER

bad faith, it is notable that he fails to establish that his articulated justifications for his petition (to

obtain competent medical care and to obtain a passport with a 1944 birth date) are valid.

Petitioner provides an insufficient basis for amending his naturalization certificate.

CONCLUSION

Petitioner's petition [1] is denied.

IT IS SO ORDERED.

Dated this ____12____ day of ____September____, 2012

Marco A. Hernandez
United States District Judge

27 - OPINION & ORDER